## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| JODY E. TAPLEY, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| OSMOSE UTILITIES SERVICES, INC., and BRIAN SCOTCH, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Jody E. Tapley ("Tapley" or "Plaintiff"), by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Osmose Utilities Services, Inc., and Brian Scotch (*collectively*, "Defendants"), respectfully showing the Court as follows:

## JURISDICTION AND VENUE

1.

Plaintiff commences the above-captioned case pursuant to: (a) the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") for disability discrimination; (b) the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601, *et seq.*, ("FMLA") for interference and retaliation; and

(c) the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

This Court has original jurisdiction over Plaintiff's ADA and FMLA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's State law claims, which involve the same nucleus of operative facts, pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Defendants reside and/or maintain a place of business in the Northern District of Georgia, Newnan Division, and the unlawful employment practices forming the basis of the Complaint occurred in this District and Division.

4.

Plaintiff satisfied all administrative prerequisites to commence the above-captioned case.  Specifically, Plaintiff timely submitted, *inter alia*, a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-202-04572) and Plaintiff has timely commenced the above-

captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated February 5, 2021.

## **PARTIES**

5.

Tapley is a female citizen of the United States, resident of the State of Georgia, and entitled to bring an action of this nature and type.

6.

Tapley is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

7.

At all times relevant to the above-captioned case, Tapley was an employee of Osmose Utilities Services, Inc., within the meaning of, *inter alia*, the ADA and FMLA.

8.

Defendant Osmose Utilities Services, Inc., ("Osmose") is a Delaware profit corporation authorized to do, and is actually doing, business in the State of Georgia (Georgia Control Number 0258673).

9.

Osmose is a telecommunications and electric utilities services provider with a principle office located at 635 Highway 74 South, Peachtree City, Georgia 30269.

10.

Osmose may be served with Summons and this Complaint for Damages via its Registered Agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

11.

Osmose is and was, at all relevant times, a private employer engaged in an industry affecting commerce within the meaning of, among other laws, the ADA and FMLA, employing more than fifty (50) employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding calendar years.

12.

Defendant Brian Scotch ("Scotch") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

13.

Scotch is and was, at all relevant times, an employee of Osmose, Manager of Operations Support, involved in the day-to-day operation of Osmose, and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Osmose.

14.

Scotch is an employee of Osmose and, at all relevant times, Scotch was Tapley's supervisor, who participated in the unlawful discriminatory and tortious conduct described herein.

15.

Scotch may be served with process at Osmose located at 635 Highway 74 South, Peachtree City, Georgia 30269.

## STATEMENT OF FACTS

16.

Osmose provides critical inspection, mobile contact voltage testing, maintenance, as well as restoration services for electric transmission, distribution, and telecommunications utilities throughout the United States, Europe, Australia, and New Zealand.

17.

Although headquartered in Peachtree City, Georgia, Osmose also has locations in New York, and the Netherlands.

18.

Tapley is a fifty-three (53) year old, Caucasian female residing in Sharpsburg, Georgia.

19.

At all relevant times, Tapley was blind in one (right) eye and a qualified individual under, among other laws, the ADA and/or the FMLA.

20.

After graduating from high school, Tapley studied real estate at Coastline Community College in Huntington Beach, California.

21.

Prior to working with Osmose, Tapley served in several professional positions, including, but not limited to a Customer Service Representative with Randstad Staffing, Logistics Planning Assistant and Fulfillment Specialist with Toto USA, Accounts Payable Representative with Sysco Food Systems, as well as Accounts Payable and Finance Support Representative with Telerent Leasing Corporation.

22.

In or about May 2018, Tapley began working, on a temporary assignment from Randstadt, for Osmose as an On-Call Locator II responsible for, *inter alia*, researching utility histories, documenting utility irregularities, enforcing utility separation requirements, providing customer support, identifying and mapping the location and depth of utility lines, as well as other duties and tasks assigned by managers and supervisors.

23.

In addition to Scotch, Tapley also worked under the supervision of Rebecca Swaney ("Swaney"), who served as Osmose's Supervisor in the On-Call Department under the direction of Scotch.

24.

When commencing employment with Osmose, Tapley advised Scotch and Swaney that Tapley was blind in Tapley's right eye and that Tapley would be having corrective surgery to address her vision disability.

25.

Once employed at Osmose, Tapley diligently performed all tasks while meeting or exceeding all performance expectations and, thus, in September 2018, Tapley was permanently hired, effective October 1, 2018, as an On-Call Locator II.

26.

Due to the strain of overcompensation during the course of employment, the vision in Tapley's healthy left eye began to weaken.  To address the issue, Tapley relocated workstation monitors and enlarged professional maps.  However, Tapley still required surgery to correct her vision.

27.

Due to the weakening vision, in or about January 2020, Tapley received a "needs improvement" professional review.  When discussing the issue with Scotch, Tapley explained that, due to the weakness developing in Tapley' healthy left eye, Tapley was experiencing difficulties with performing daily utility pole counts.  In this regard, Tapley advised Scotch that Tapley would be having corrective vision surgery in the near future.  Scotch responded, "Keep me posted."

28.

In addition to updating Scotch concerning Tapley's eye condition and the impending corrective surgery, Tapley routinely and consistently advised and updated Swaney concerning Tapley's condition and corrective surgery.

29.

Following the January 2020 conversation with Scotch, Tapley scheduled an appointment/examination with the physician, who would perform Tapley's corrective surgery (cornea transplant) in the next couple of weeks.

30.

On or about February 12, 2020, Tapley advised Scotch of Tapley's examination appointment on February 13, 2020, and discussed the need to take FMLA leave.

31.

Within hours of being advised of Tapley's corrective surgery appointment and the intent to take FMLA leave, on or about February 12, 2020, Scotch called Tapley to Scotch's office, where Scotch informed Tapley that Osmose was terminating Tapley's employment *purportedly* due to "unsatisfactory performance."  When Tapley advised Jody Hamlet ("Hamlet"), Osmose Director of Human Resources, that Scotch knew about the scheduled corrective surgery, Hamlet stated that

February 12, 2020, would be Tapley's last day of employment and that Tapley's health insurance would be terminated, effective midnight.  Incredibly, Hamlet also directed Tapley to immediately apply for unemployment benefits, which Osmose would not challenge or oppose.

32.

Days after the termination of employment on February 12, 2020, Tapley returned to Osmose to gather personal belongings.  Again, while discussing the termination of employment, Hamlet stated that Tapley would not have any issues obtaining employment because Tapley was a "good employee."  Moreover, when Tapley inquired about returning to Osmose following corrective surgery, Hamlet stated that Tapley would be "eligible for rehire" because Tapley did not violate any rules or policies while employed for Osmose.

33.

Because Tapley's medical insurance was cancelled, Tapley was unable to proceed with the necessary corrective vision surgery.

34.

Under no uncertain terms, Defendants terminated Tapley's employment and punished Tapley based solely upon Tapley's disability and intent to seek corrective surgery.

35.

Other employees and individuals, outside of Tapley's protected class, were treated differently because these employees and individuals, who were not partially blind, were not terminated or otherwise subjected to adverse employment actions associated with *purported* "unsatisfactory performance."

36.

Tapley was qualified and capable of continuing employment as an On-Call Locator II despite Tapley's partial blindness.

37.

As a result of Defendants' unlawful actions, Tapley has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

## CLAIMS FOR RELIEF

### COUNT I:
### DISABILITY DISCRIMINATION
### IN VIOLATION OF THE ADA
### (Against Osmose)

38.

Tapley re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

39.

The ADA prohibits employers from discriminating against a qualified individual on the basis of disability.

40.

Defendants violated the ADA, such that a cause of action exists where discrimination on the basis of disability was the causative agent of adverse actions directed at Tapley by Defendants.

41.

At all relevant times, Tapley was a partially blind female, qualified individual under the ADA, employee of Osmose, and a member of a protected class under the ADA.

42.

At all relevant times, Tapley was qualified for her position, and capable of performing, as an On-Call Locator II despite Tapley's partial blindness.

43.

At all relevant times, Osmose was Tapley's employer, as defined by, among other laws, the ADA.

44.

At all relevant times, Osmose acted by and through its agents and employees, including, but not limited to Scotch, each of whom acted in the course and scope of their employment with and for Osmose.

45.

At all relevant times, Scotch was Osmose's Manager of Operations Support and Tapley's supervisor, responsible for, among other things, terminating Tapley's employment.

46.

Within hours of receiving notice of Tapley's medical examination, intent to undergo corrective surgery, and intent to take medical leave, Defendants immediately terminated Tapley's employment.

47.

With the knowledge that Tapley was partially blind and intending to undergo corrective surgery, Defendants terminated Tapley's employment solely because of the disability.

48.

Defendants' termination of Tapley's employment due to partial blindness constitutes unlawful discrimination on the basis of disability in violation of the ADA.

49.

As a result of the termination of employment based solely upon Tapley's partial blindness, Tapley was treated less-favorably than similarly-situated, non-partially blind employees of Osmose in violation of the ADA.

50.

Defendants willfully and wantonly disregarded Tapley's rights.

51.

Defendants discriminated against Tapley in bad faith.

52.

The effect of the conduct complained of herein has been to deprive Tapley of equal employment opportunity and to otherwise adversely affect Tapley's status as an employee solely because of Tapley's partial blindness.

53.

As a proximate and direct result of Defendants' conduct, Tapley has suffered, and continues to suffer, damages, including, but not limited to, emotional distress, inconveniences, as well as loss of income and benefits, for which Tapley is entitled to recover from Osmose in an amount to be determined by the enlightened conscience of the jury.

54.

Defendants' actions were willful, intentional, malicious, and conducted in bad faith with callous and/or reckless indifference to Tapley's Federally-protected rights, thereby entitling Tapley to an award of punitive damages.

## COUNT II:
## RETALIATION
## IN VIOLATION OF THE FMLA
**(Against Osmose)**

55.

Tapley re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

56.

The FMLA prohibits employers from retaliating against employees who exercise or attempt to exercise rights under the FMLA.

57.

Tapley was an eligible employee and/or member of a protected class who maintained a serious health condition as defined by the FMLA and accompanying regulations.

58.

Osmose is an employer covered by the FMLA.

59.

During the relevant period, the relationship between Tapley and Osmose was an employer-employee relationship within the meaning of, among other laws, the FMLA, such that a cause of action exists where retaliation on the basis of exercising a right under the FMLA is alleged to be the causative agent of adverse employment actions directed toward Tapley by Defendants.

60.

At all relevant times, Osmose acted by and through its agents and employees, including, but not limited to Scotch, each of whom acted in the course and scope of their employment with and for Osmose.

61.

During the course of employment Defendants unlawfully and knowingly discriminated against Tapley on the basis of, *inter alia*, disability in violation of, among other laws, the ADA.

62.

Tapley advised Defendants of the intent to take FMLA leave to undergo corrective surgery to address Tapley's partial blindness.

63.

When terminating Tapley's employment, Defendants retaliated against Tapley for advising Defendants of the intent to take FMLA leave and/or exercising her right to take medical leave, as provided by the FMLA, for Tapley's serious health condition.

64.

The effect of Defendants' actions has been to suspend and deprive Tapley of an employment position, as well as loss income in the form of wages, prospective medical and retirement benefits, social security, as well as other benefits due Tapley because of the exercise of Tapley's rights under the FMLA.

65.

Defendants' adverse employment actions against Tapley constitute unlawful retaliation against Tapley in violation of the FMLA.

66.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Tapley harm and/or were committed with reckless disregard of the harm causes to Tapley in derogation of Tapley's Federally-protected rights.

67.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

68.

The retaliation to which Tapley was subjected to by Defendants entitles Tapley to all appropriate relief under the law.

69.

As a result of Defendants' discriminatory and retaliatory conduct, Tapley is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (b)—including, but not limited to, back pay, front pay or reinstatement, attorney's fees, and costs of litigation.

70.

Tapley is also entitled to liquidated damages for Defendants' violation of Tapley's rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii) because Defendants' actions were willful violations of the FMLA.

**COUNT III**
**INTERFERENCE**
**IN VIOLATION OF THE FMLA**
**(Against Osmose)**

71.

Tapley re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

72.

The FMLA prohibits employers from interfering with, restraining, and/or denying the exercise of or the attempt to exercise any rights guaranteed by the FMLA.

73.

Tapley was an eligible employee and/or member of a protected class who maintained a serious health condition as defined by the FMLA and accompanying regulations.

74.

Osmose is an employer covered by the FMLA.

75.

During the relevant period, the relationship between Tapley and Osmose was an employer-employee relationship within the meaning of, among other laws, the FMLA, such that a cause of action exists where Tapley's attempt to take FMLA leave is alleged to be the causative agent of adverse employment actions directed toward Tapley by Defendants.

76.

At all relevant times, Osmose acted by and through its agents and employees, including, but not limited to Scotch, each of whom acted in the course and scope of their employment with and for Osmose.

77.

During the course of employment, Tapley had an "entitlement to leave," as defined by the FMLA, when Tapley was required to undergo corrective surgery due to Tapley's serious health/medical condition—Tapley satisfied all other requirements under the FMLA.

78.

The FMLA imposes a duty on employers to advise employees of rights under the FMLA, including, but not limited to, the right to leave under the FMLA.

79.

Defendants violated the FMLA by interfering with Tapley's rights when, *inter alia*, failing to advise Tapley of Tapley's rights under the FMLA, including, but not limited to, the right to leave, and terminating Tapley's employment, thereby preventing Tapley from exercising her rights under the FMLA in a meaningful manner.

80.

As a direct and proximate result of Defendants interference, Tapley has suffered financial losses, been deprived of employment, and otherwise lost compensation in the form of, *inter alia*, wages, insurance, retirement benefits, social security benefits, and other due benefits.

81.

Defendants' interference was willful, deliberate, and intended to cause Tapley harm and/or was committed with reckless disregard of the harm caused to Tapley in derogation of Tapley's Federally-protected rights.

82.

Tapley is entitled to recover, inter alia, equitable and monetary relief for Defendants' violation of the FMLA, including, but not limited to, back pay, front pay or reinstatement, attorney's fees, and litigation expenses.

### COUNT IV:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
**(Against Osmose and Scotch)**

83.

Tapley re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

84.

Defendants' statements, conduct, and behavior towards Tapley were intentional and reckless, extreme and outrageous, causing Tapley severe shame, humiliation, embarrassment, and emotional distress of a nature that no pregnant person should endure.

85.

Defendants' statements, conduct, and behavior towards Tapley demonstrate, among other things, a "retaliatory animus."  For example, after Tapley advised Defendants of the scheduled medical examination and the intent to take FMLA leave, Defendants immediately terminated Tapley's employment.

86.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Tapley and Tapley's income, livelihood, and/or healthcare during the COVID-19 Pandemic.

87.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Tapley, Defendants knew that Tapley was partially blinded and scheduled to undergo corrective surgery.

88.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Tapley.

89.

As a result of Defendants' conduct, Tapley has and will continue to suffer severe emotional distress, medical complications associated with the partial blindness, and other damages for which Tapley is entitled to recover.

**COUNT V**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF GEORGIA LAW**
**(Against Osmose)**

90.

Tapley re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

91.

As a result of the actions taken by Scotch, Tapley suffered, among other things, discrimination based on disability, retaliation, and interference.

92.

Osmose owed Tapley a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory, retaliatory, or tortious conduct.

93.

By negligently retaining and supervising its employees, including Scotch, Osmose breached its duty to hire, retain, and supervise an employee who would lawfully behave.

94.

Osmose knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Tapley.

95.

By failing to engage in any corrective or remedial action, Osmose ratified, condoned, and/or adopted its employees' unlawful conduct.

96.

As a direct and proximate result of Osmose's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by Osmose's employees, including, but not limited to, Scotch, Tapley suffered damages.

97.

Osmose's negligent conduct entitles Tapley to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(1)     Grant Plaintiff a trial by jury as to all triable issues of fact;

(2)     Grant declaratory judgment that Plaintiff's rights under, *inter alia*, the FMLA and the ADA were violated;

(3)     Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4)     Award compensatory damages in an amount to be determined by a jury;

(5)     Award appropriate back wages, future wages, and compensation for other damages in amounts to be shown at trial;

(6)     Award prejudgment interest on any award of back pay;

(7)     Award liquidated damages;

(8)     Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to deter such conduct in the future;

(9)     Award Plaintiff's attorneys' fees, costs, and disbursements; and

(10)     Award Plaintiff such further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 5th day of May, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
YIYING ZHANG
Georgia Bar No. 798231
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com
Email:  azhang@moldenlaw.com

*Counsel for Plaintiff Jody E. Tapley*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| JODY E. TAPLEY, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. _____ |
| OSMOSE UTILITIES SERVICES, INC., and BRIAN SCOTCH, | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>LOCAL RULE AND SERVICE CERTIFICATION</u>

The undersigned certifies that this document has been prepared with a font and point selections approved by the Court in Local Rule 5.1(B) and that the foregoing **Complaint for Damages** has been filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 5th day of May, 2021.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406